White ads. Brown.

---

John Moore White *ads.* Abraham Brown, Trustee.

1. Where one of several defendants pays to the plaintiff a certain sum, which the plaintiff agrees to receive in satisfaction of the judgment, it is a satisfaction of the judgment not only as to the defendant paying the money, but as to all the defendants.

2. If the plaintiff assigned the judgment to the defendant who pays the money, or to any other person for his benefit, it cannot be used to recover of the other defendants the amount paid; the judgment being satisfied as to one is satisfied as to all, and on application for that purpose by one of the defendants the court will order satisfaction to be entered.

3. Where one defendant pays off a judgment he cannot use it to collect of his co-defendants the share they were liable to pay. His remedy is by action for money paid.

On motion to enter satisfaction of a judgment.

Argued before Justice VREDENBURGH.

*W. L. Dayton*, for the motion.

*P. D. Vroom*, contra.

VREDENBURGH, J.   In January, 1847, the plaintiff recovered judgment in this court against William P. Robeson, John Moore White, and several others, in a plea of debt for $60,000.

In 1848, William P. Robeson paid Governor Vroom, the agent of plaintiff, $6000 on this judgment.

Mr. White now moves to have satisfaction entered, upon the allegation that the plaintiff received this $6000 in full.

It is not contended by Mr. White that any technical release was ever executed by the plaintiff. The papers between the parties are so neither in terms nor are they under seal. But it is contended that the plaintiff agreed to receive, and did receive, this $6000 as full payment of the judgment. Payment in full might have been made, either by the payment of the whole $60,000 in cash or by any lesser sum which the plaintiff might agree to so receive. If he agreed to receive five dollars in full satisfaction, and it was paid and received accordingly, it was as complete a payment and satisfaction of the judgment as if the whole $60,000 had been paid in cash.

The case presents for consideration two questions—1st, did the plaintiff agree to receive, and did he in fact receive, this $6000 in full payment of the judgment; 2d, if he did, what are its legal effects.

*First.*   Did the plaintiff agree to receive this $6000 in full as against Mr. Robeson ?

The original agreement, signed by Mr. Vroom, the agent of the plaintiff, and Mr. Robeson, is as follows: "A memorandum made at Belvidere, September 1st, 1848. On a sale of property called the water power property, made this day by Henry McMullin, master, the same was purchased by Peter D. Vroom, for the sum of $18,000. The understanding is, that if the water power company, or any of its members, shall pay to said Peter D. Vroom, (for the benefit of those interested in the judgment against the property and against the members of the water power company personally,) the sum of $4000, on the 10th day of April next, and the further sum of two thousand dollars, on or before the 1st day of October next, then the property held under the judgment is to be released, and the company are to have until the 1st day of April next to redeem the mortgaged premises this day sold : on payment of the amount of the decree on the mortgage and interest, an agreement in due form is to be executed after the master's deed is given. In the meantime let the above memorandum stand as the understanding of the parties."

On the 1st day of April, Governor Vroom gave Mr. Robeson an additional writing, of which the following is a copy :

"In addition and explanation of the written memorandum it is hereby agreed, that on the payment of the $6000 within stipulated, according to agreement, the judgment within referred to shall either be released or assigned to such person or persons as the said William P. Robeson may choose, and the release or assignment to be at the option of the said William P. Robeson, to be expressed in writing, and if assigned, to be for the benefit of those who have paid up their just proportions of the money heretofore paid on the original mortgage, and expended on the property, and which may be paid under this agreement."

Can any one doubt, upon the face of these papers, that, as

between the plaintiff and Mr. Robeson, the $6000 was to be in full? This judgment was upon a bond secured by mortgage; the mortgage has been foreclosed, and upon a sale the property had been bought in by the plaintiff for $18,000. We can easily understand that there might have been equitable and conscientious reasons why the plaintiff might have been willing to receive the $6000 in full—the bond and mortgage might have been for a balance of consideration money due on a sale of the mortgaged property to the defendants; and after getting the original payments, as made at the time of the conveyance of the property back again under the foreclosure, and the $6000 besides, we can easily understand how the plaintiff might have agreed to receive the $6000 in full. Although the papers do not say so in terms, yet such is manifestly the intent of the parties, and, as appears to me, the legal effect of the instruments.

By the memorandum of the 1st September, 1848, the plaintiff gives the defendants the option of two things— they may redeem the mortgaged premises by paying the amount due, or, if the plaintiff retains the property under the master's sale, upon receiving $6000 more, the other property of all of the defendants held under the judgment was to be released, showing that the plaintiff held the amount of the judgment equivalent to the property and $6000. If they redeemed the property, that would have been strict payment of the whole. The equivalent of that was the plaintiff holding the property and the $6000. The plaintiff evidently considered an agreement to release the property as of equal import with satisfying the judgment.

But if there could be any doubt about the meaning of the memorandum of 1st September, I apprehend there can be none about the one in addition and explanation of it, dated the 11th of April, 1849. This in terms provides that on the payment of the $6000 the judgment shall be either released or assigned to such person as the said

Robeson may choose for the benefit of those who have paid their proportion of the moneys theretofore paid on the mortgage or expended on the property or the $6000. Upon the payment of the $6000 the judgment was either to be released or assigned for the benefit of Mr. Robeson. Is not this equivalent to agreeing to receive the $6000 in full, so far as Mr. Robeson is concerned ? If the agreement is performed, what could the plaintiff do on the judgment towards collecting the balance, either after the release or after an assignment for Robeson's benefit ?

If the $6000 was to be received on account, and not in full satisfaction, the plaintiff or his assignee would hold the judgment for the unpaid balance ; but this would be expressly defeated if Mr. Robeson chose to release, which he had a right to do, or if assigned, it would be held not only for what had been paid by the defendants before the assignment, but also for the balance unpaid at the date of the assignment. Here the agreement to assign was avowedly not for any unpaid balance claimed by the plaintiff, but to enable one of the defendants to re-collect what had already been paid by him from another of the defendants—in other words, to enable one defendant to collect by the lien of the judgment from the other defendants what he has paid over his share—the agreement by the plaintiff to assign the judgment for such a purpose, to enable him to collect, not what is unpaid on the judgment, but what has been already paid, is equivalent to saying that, as between the plaintiff and Mr. Robeson, the $6000 is in full. Now if the thing had rested here simply in agreement it might have been a question whether the agreement, being executory, was not void for want of consideration, and the plaintiff, or his assignee, at liberty to repudiate it. But here the agreement has been executed, the $6000 was actually paid, and the plaintiff, or his assignee, is no longer at liberty to dispute it.

On the 11th of October, 1849, Governor Vroom gave

Mr. Robeson a receipt, of which the following is a copy: "Rec'd of William P. Robeson the sum of $2000, being the balance to be paid by him on the judgment of Ab'r Brown *v.* Wm. P. Robeson and others, which is the full amount stipulated to be paid and received as per agreement of September 1st, 1848, and in consideration of such payment and the previous payments the private property of said Robeson is to be released from the operation of said judgment, and discharged therefrom, and the judgment and execution to be placed under the control of said Robeson, as against the other defendants, to be by him used in any legal way." Now, this receipt explains, in the first place, what the agreement meant, and that the $6000 was to be in full, as against Mr. Robeson. It says— "Rec'd $2000, being the balance to be paid by him on the judgment of Abraham Brown." And, as if to make doubly sure that Mr. Robeson was to be called on for no more, says—"which $6000 is the full amount stipulated to be paid and received as per agreement of Sept., 1848." It was the full amount not only of which Robeson agreed to pay, but what the plaintiff agreed to receive on the judgment, and in consideration thereof the plaintiff agrees not only to release the private property of Mr. Robeson, but to place the judgment and execution under his control. Now, under these agreements and receipts, what more than the $6000 could be collected by the plaintiff, or his assignee, of Mr. Robeson? Could they seize his person or levy upon or sell his property? The control of the plaintiff over the judgment was gone; they had placed it under the control of Mr. Robeson, himself one of the defendants. Was not giving him the control of the judgment and executions in consideration of $6000 the same thing as saying that the $6000 was in full, as between them?

But the very terms of this assignment to Mr. Robeson show that, as between the plaintiff and him, this $6000 must have been in full; this receipt says, the judgment

White v. Brown.

and executions to be placed under the control of said Robeson, not as against himself, but against the other defendants, to be by him used in any lawful way.

If the plaintiff agrees that, in consideration of $6000, the judgment is not to be used against Mr. Robeson, is not the $6000 a full satisfaction as against him? Do not the very terms of the agreement to assign show that, as between the plaintiff and Robeson, the $6000 was in full, the judgment and execution could not be put under the control of Mr. Robeson except for the purpose of entering satisfaction? Where a defendant pays off a judgment, his rights, as against his co-defendants, are to collect from them, by action for money paid, their proportionate share of what he had overpaid, and not to use the lien of the judgment to collect from them the unpaid balance. All the papers show that in this case the plaintiff never imagined for a moment that he was to place the control of the judgment in the hands of Mr. Robeson to collect the balance over the $6000, nor did Mr. Robeson so think, nor does any party now so claim; on the contrary, the agreement of the 9th of April expressly shows that it was to enable Mr. Robeson, if he could do so lawfully, to force the other defendants to pay up their proportion of what had already been paid. The plaintiff, therefore, could never have intended this $6000 merely on account, or to have collected more on it, either themselves, or to have enabled any assignee to do so.

It is perfectly manifest, from the papers, that the plaintiff agreed to take the $6000 in full, and to assign the judgment merely to enable Mr. Robeson, if he could do so lawfully, to collect from his co-defendants their proportion of the money he had advanced over his share. It is also manifest, from the papers, that the plaintiff received the $6000 in full, not only as against Mr. Robeson, but that it was all that they intended to collect from any of the defendants.

The language of the original memorandum of the 1st

of September, 1848, says that, if the water power company, or any of its members, shall pay the $6000, then the whole property of all the defendants held by the judgments is to be released, showing that the arrangement was not a special one for the benefit of Mr. Robeson, but that the plaintiff, looking at all the equities of the case, felt that he was justified to himself in taking the $6000 as satisfaction against all the defendants. It was the $6000 that was wanted by the plaintiff, indifferent from whom it came, and intending, if paid, that the judgment should no longer be a cloud over any of the defendants, except so far as Mr. Robeson might lawfully use it to force his co-defendants to pay up their share. It is evident that the plaintiff agreed to make this assignment at the request of Mr. Robeson, but it was always done with a significant *protestando*—it was always with a condition to be used by himself in some lawful way. It is evident that the plaintiff could not see any lawful way in which he could so use it, but he was willing that Mr. Robeson might try to discover one, if he could. It therefore satisfactorily appears as a question of fact, that the plaintiff, in view of all the equities of the case, agreed to receive the $6000 in full of the whole balance due on the judgment, not only as against Mr. Robeson, but all the other defendants; that all the plaintiff wanted over the property he had bought was the $6000, and having actually received that under the agreements, he must be deemed to have received it in full.

*Second.* What are the legal effects of such payment and receipt?

It is a well-settled legal principle that payment by one of several co-defendants is payment by all, and it makes no difference in legal effect whether the plaintiff agreed to receive the $6000 in full as against Mr. Robeson or as against all the defendants; so that, as regards the other defendants, its payment by Mr. Robeson is the same as if paid by all—it equally extinguishes the judgment. None

of the defendants can use the force of the judgment as between themselves, and that for the simple reason that it is paid off. Their equities must be arranged in separate suits between the several defendants. No possible agreements between the plaintiff and the paying defendants can alter these rights. Whatever money one defendant advances on the judgment can only go as payment—if it is the whole, it *ipso facto* satisfies and extinguishes the judgment; if a part, *pro tanto.*

The assignment to G. M. Robeson cannot alter the rights of the parties. He can be in no better condition than his assignor. As regards the plaintiff in the judgment, it was paid off many years before the assignment to him, and no assignment by the plaintiff can again, as against Mr. White, give it vitality.

But again, suppose the $6000 was not in full, it was satisfaction *pro tanto*, and by the very terms of the agreement the assignment for Mr. Robeson's benefit was not to collect the unpaid balance, (the plaintiff expressly guarded himself and all the defendants against that eventuality,) but, 1st, to collect the money paid on the original mortgage; and 2d, the money spent on the property, which were matters foreign to the judgment; and in the 3d place, this very $6000 for which the judgment by its very payment was *pro tanto* satisfied, so that if the plaintiff retained the judgment it would certainly only be to collect the balance over the $6000, which they disavow all right or intention of doing; or if assigned for the benefit of Mr. Robeson, he could use it for no legal purpose, but, on the contrary, all the three purposes to which he is limited by the terms of the agreement to assign are equally illegitimate. He could, by the very terms of the assignment, not use the judgment to collect any balance over the $6000, but only the money paid on the mortgage before the decree, or for money expended on the property, or the $6000. As to the two former they were matters

foreign to the judgment, as to the $6000, the judgment *pro tanto* satisfied.

Suppose George M. Robeson should undertake to enforce the lien of this judgment, could he enforce it against William P. Robeson? If he did, would not this court instantly order satisfaction to be entered? Could we enter it partially and say it was satisfied as against one defendant and not satisfied as against the others? The whole difficulty arises from one of several defendants having paid off the judgment, endeavoring to evade the technical rule of law, that payment by one is payment by all, and to substitute the short and certain process of the lien of the judgment for the action for money paid, laid out and expended.

Let satisfaction be entered on the judgment.

REVERSED, 5 *Dutch.* 514.